UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MARTIN MELVIN, | : | |
|     Plaintiff, | : | |
| | : | Case No. 3:16-cv-537(RNC) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| et al., | : | |
|     Defendants. | : | |

RULING AND ORDER

In response to the initial review order dismissing the complaint in this case, plaintiff has filed an amended complaint eliminating some claims and defendants. The allegations of the amended complaint, construed liberally to raise the strongest arguments they suggest, raise the possibility that plaintiff may have a potentially valid claim for damages under 42 U.S.C. § 1983, specifically, a Fourteenth Amendment substantive due process claim against one or more parole officials for requiring him to reside as an in-patient at a drug treatment facility although they knew he would contract a serious illness at the facility and be deprived of adequate medical care. See Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005). The allegations in the amended complaint fall short of stating a plausible claim under Jacobs because the allegations are merely conclusory in nature (in other words, unsupported by specific factual allegations required to state a plausible claim). Plaintiff will be given an opportunity to file a second amended complaint

alleging specific facts in support of a substantive due process claim under Jacobs.  Plaintiff should bear in mind that a parole official who orders a parolee to reside at a drug treatment facility as a condition of parole may be entitled to absolute immunity under § 1983 depending on whether the official was performing a quasi-adjudicatory function rather than an administrative one.  See Victory v. Pataki, 814 F.3d 47, 65-67 (2d Cir. 2016).  To be timely, the second amended complaint must be filed on or before October 15, 2017.  All other § 1983 claims in the amended complaint are dismissed without leave to amend.  To the extent the amended complaint can be construed to allege claims under state law, the Court declines to exercise supplemental jurisdiction over any such claims.

I. Allegations

The amended complaint alleges the following.  In September 2009, plaintiff was sentenced in state court to a term of imprisonment of three years to be followed by a five-year term of special parole. On February 3, 2014, while he was on special parole, he was ordered to participate in drug treatment at Daytop at the "express direction" of the Parole Board.  His participation in the program was a condition of his special parole.

While an in-patient at Daytop, plaintiff was exposed to methecillin sensitive staphylococcus aureus (MSSA) resulting in an infection. Daytop had no screening for communicable diseases and any infected person could walk in off the street. Plaintiff was exposed to other residents at Daytop who should have been quarantined.

Plaintiff was ill at Daytop from February 10, 2014, through early March 2014. He was denied sick bed status for most of that time. In response to his requests for sick bed status, defendant Kushpinski threatened to report that he was refusing programs. Plaintiff filed grievances about bedbug bites and his illness. Daytop Program Director Lead and Nurse Supervisor Linette failed to respond to the grievances. Plaintiff told Dr. Shi about his symptoms of oscillating fever, vomiting and chest pain but she "deliberately" failed to order a necessary pulmonary examination. As a result, plaintiff lapsed into septic shock with "lung effusions, abscess and collapse."

Daytop Program Technician Alice "sadistically" confiscated an article of plaintiff's winter clothing even though he was ill. When he objected, she falsely reported to Program Director Lead that he was filing a lawsuit against Daytop. In fact, he was merely trying to file a change of address notice in a unrelated

3

case, Melvin v. Miller, 3:09-CV-1612 (RNC). Lead mistakenly believed the notice was a complaint against Daytop and, as a result, the notice was "disregarded" and not mailed. Later, in March 2014, when plaintiff left Daytop to obtain medical care, a second change of address notice was discarded. In addition, after plaintiff left Daytop, someone there destroyed his personal property, including legal materials.

Plaintiff was physically assaulted by another resident at Daytop. After the assault, Daytop Counselor Supervisor Greg erroneously reported to the Parole Board that plaintiff had assaulted the other resident. As a result, plaintiff was returned to prison. A discharge summary was prepared at Daytop by Counselor Williams. The discharge summary repeated false statements contained in a report fabricated by Daytop Counselor Diaz indicating that plaintiff admitted to a history of substance abuse, psychiatric issues and gun use. The discharge summary stated that plaintiff was resistant to treatment and had difficulty adjusting at Daytop. It also made vague references to a "homicidal history." Parole Officer Runlette subsequently initiated a parole revocation proceeding, which resulted in the revocation of plaintiff's special parole.

Parole Board Chair Tindall "knew or should have known" that

as an in-patient at Daytop, plaintiff would be subjected to the unsafe living conditions and mistreatment he alleges. Daytop management was motivated by its "single-minded, greed-filled deal to garner program fee payments from state insurance coffers." And the staff at Daytop was "inherently inept." The Parole Board — including Chairs Tindall and Guiles and members Ireland, Smayda, and Berry — abused its discretion in revoking plaintiff's parole.

II. Legal Standard

Under 28 U.S.C. § 1915A, courts are required to review a prisoner's complaint against government entities and employees and dismiss any part of the complaint that is frivolous or malicious or fails to state a claim on which relief may be granted. A complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing a pro se complaint, a court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). Pro se plaintiffs are given an

5

opportunity to file an amended complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

III. Discussion

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983. In order to state a claim on which relief may be granted under § 1983, a complaint must satisfy two essential requirements: (1) the conduct complained of must have been committed by a person acting "under color of state law"; and (2) the conduct complained of must have violated a right secured to the plaintiff by federal law. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). In this case, the allegations against the Daytop defendants do not satisfy the first requirement and the allegations against the Parole Board defendants do not satisfy the second requirement.

A. Daytop Defendants

Section 1983 provides a remedy for deprivation of a federal

right only when "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." <u>Grogan v. Blooming Grove Volunteer Ambulance Corps</u>, 768 F.3d 259, 264 (2d Cir. 2014) (citations omitted). The statute does not apply to "merely private conduct, no matter how discriminatory or wrongful." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 560 U.S. 40, 49-50 (1999) (citations omitted). The Daytop defendants are not state actors under the circumstances plaintiff alleges or conceivably could allege. For this reason, the amended complaint fails to state a claim for relief under § 1983 against the Daytop defendants and all claims against these defendants are dismissed without leave to amend.

A person employed by a nonpublic entity such as Daytop may be liable under § 1983 only if his or her actions meet one of three tests for determining whether a person's actions are attributable to the state:

> 1. The compulsion test: the entity acts pursuant to the coercive power of the state or is controlled by the state, 2. The public function test: the entity has been delegated a public function by the state, or, 3. The joint action test or close nexus test: the state provides significant encouragement to the entity, the

7

entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies.

Hollander v. Copacabana Nightclub, 624 F.3d 30, 34 (2d Cir. 2010) (quotations and citations omitted).

None of these tests is satisfied here. With regard to the compulsion test, the amended complaint alleges that plaintiff was ordered by the state to enter Daytop's residential drug treatment program, but it does not allege that the program was controlled by the state. Even if plaintiff were to amend the complaint to allege that Daytop and its employees were licensed and regulated by the state, the compulsion test would not be satisfied. See Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 112 (2d Cir. 2003) ("[C]onduct by a private entity is not fairly attributable to the state merely because the private entity is a business subject to extensive state regulation or 'affected with the public interest.'" (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974)).

Under the public function test, the actions of employees of a private drug rehabilitation facility may be attributed to the state if the plaintiff was confined at the facility pursuant to an alternative-to-incarceration program. See Johnson v. White,

8

No. 06CIV2540, 2010 WL 3958842, at *4 (S.D.N.Y. Sept. 9, 2010) (finding state action because treatment facility was "fulfilling the role" of the state department of correctional services); see also Wilson v. Phoneix House, 2011 WL 3273179, at *3 (S.D.N.Y. 2011) (finding state action under the nexus test). That is not so if the individual resides at the facility as a condition of parole. "The provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state." Byng v. Delta Recovery Servs., LLC, No. 6:13-CV-733 MAD/ATB, 2013 WL 3897485, at *9 (N.D.N.Y. July 29, 2013), aff'd, 568 F. App'x 65, 66 (2d Cir. 2014). Accordingly, courts have consistently held that drug treatment facilities that treat individuals pursuant to a condition of parole are not performing a public function. See Byng, 568 Fed. App'x at 66 (affirming dismissal of claims against residential substance abuse program plaintiff parolee was ordered to attend); Smith v Devline, 239 Fed. App'x 735, 737 (3d Cir. 2007) (same); Justice v. King, No. 08-CV-6417-FPG, 2015 WL 1433303, at *19 (W.D.N.Y. 2015) (collecting district court cases in the Second Circuit); cf. Gross v. Samudio, 630 F. App'x 772, 778 (10th Cir. 2015) (dismissing claim against sex offender treatment program parolee was ordered to attend).

With regard to the joint action or close nexus test, plaintiff alleges that the Parole Board ordered him to attend Daytop's program and Daytop reported his program participation status to the Parole Board. But the joint action or close nexus test requires more: the conduct complained of must involve "significant encouragement" by the state, "willful participation" in state action by the entity, or "entwining" of the actions of the entity and the state. See Hollander, 624 F.3d at 34. Plaintiff alleges that Parole Board Chair Tindall "knew or should have known" that Daytop and its employees would violate his rights. However, he does not allege that any state actor directed or encouraged the alleged violations or that Daytop employees were acting pursuant to state policy. See Vaughn v. Phoenix House Programs of New York, No. 14-CV-3918 RA, 2015 WL 5671902, at *5 (S.D.N.Y. Sept. 25, 2015) (dismissing claim against drug treatment program where its "sole function was to provide drug treatment and . . . the terms of that treatment were not directed, monitored, or significantly encouraged by the [State]").

The amended complaint includes allegations of a conspiracy. It is unclear whether the alleged conspiracy involved both parole officials and Daytop personnel or Daytop personnel only.

10

In either case, the allegations in the amended complaint are insufficient to support a claim that Daytop or its employees were state actors. To state a claim for conspiracy between a state actor and a private party under § 1983, a complaint must allege "(1) an agreement between [the] state actor and [the] private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). The amended complaint does not plausibly allege an agreement between the Parole Board defendants and the Daytop defendants to act in concert to violate plaintiff's constitutional rights.

Because the allegations of the amended complaint regarding the conduct of Daytop and its employees do not satisfy the state action requirement, all § 1983 claims against these defendants are dismissed. Under the case law just discussed, plaintiff cannot plead a plausible claim that Daytop and its employees were state actors. Accordingly, plaintiff will not be given an opportunity to file a second amended complaint against these defendants. See Byng, 568 Fed. Appx. at 66 (affirming district court's dismissal without leave to amend under 28 U.S.C. § 1915A when district court found substance abuse program was not a state

actor).

B. Parole Board Defendants

1. Claims Based On Unsafe Conditions at Daytop

Plaintiff seeks to recover money damages under § 1983 against the Parole Board, Parole Board Chairs Tindall and Guiles, other Board Members and Parole Officer Runlette for the various wrongs he allegedly suffered at Daytop. As discussed above, the allegations in the amended complaint, liberally construed to raise the strongest arguments they suggest, raise the possibility that plaintiff may have a valid claim under the Due Process Clause of the Fourteenth Amendment similar to the claim in Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005), on the ground that he was required to reside at Daytop as a condition of his special parole even though parole officials knew he would contract a serious illness and be deprived of adequate medical care.[1] Plaintiff will be given leave to file a second amended complaint alleging a violation of his right to substantive due process under Jacobs. All other claims against the Parole Board defendants under § 1983 are dismissed without leave to amend.

---

[1] In addition to the Fourteenth Amendment, the amended complaint invokes the First, Fourth, Fifth, Sixth and Eighth Amendments. However, the allegations of the amended complaint do not suggest that plaintiff has a potentially valid claim under any of these other amendments.

In Jacobs, a parolee brought an action under § 1983 alleging that his parole officers violated his civil rights "by paroling him to his mother's unsafe and unsanitary residence [and] refusing his request to relocate to a homeless shelter." 400 F.3d at 105. The Court of Appeals held that this claim should not have been dismissed because, accepting the plaintiff's allegations as true, the state had "effectively compelled him to live in unsafe conditions" in violation of his right to substantive due process under DeShaney v. Winnebago Cty. Dept. of Social Servs., 489 U.S. 189 (1989). See Jacobs, 400 F.3d at 107.

To state a claim for relief under Jacobs, plaintiff must allege conduct so arbitrary and oppressive as to shock the conscience. See Davis v. McCleary, 2017 WL 2266856,*4 (E.D.N.Y. May 23, 2017)(dismissing parolee's substantive due process claim for failure to provide medical care and requiring parolee to live in unsafe environment).

Plaintiff alleges that Parole Board Chair Tindall "knew or should have known" that he would be exposed to MSSA at Daytop and Daytop employees would fail to provide him with adequate medical care. Plaintiff's allegations regarding what Tindall "should have known" do not state a claim for relief under Jacobs because negligently inflicted harm does not violate the Due Process

13

Clause. See Davis, 2017 WL 2266856, at *4 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)). Plaintiff's allegations that Tindall "knew" he would get sick at Daytop and be deprived of adequate medical care yet still required him to go there as a condition of his parole suggest the possibility of a potentially valid substantive due process claim under Jacobs. As discussed above, however, a complaint must allege enough facts to support a plausible claim and permit the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Merely alleging that Tindall "knew" what would happen at Daytop is insufficient to provide a basis for such a reasonable inference. In addition, if Tindall was performing a quasi-adjudicatory function, rather than an administrative one, any claim would be barred by absolute immunity under § 1983. See Victory, 814 F.3d at 65-67.

2. Revocation of Parole

Plaintiff seeks damages under § 1983 on the ground that the revocation of his parole was unlawful. This claim must be dismissed for two reasons. Under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if a claim under § 1983 "would necessarily imply the invalidity of [a defendant's] conviction or sentence," the plaintiff must allege that the conviction or sentence has been

14

declared invalid. Heck prevents plaintiff from seeking damages under § 1983 based on the revocation of his parole unless and until the parole revocation has been declared invalid by a state court. See Lee v. Donnaruma, 63 Fed. App'x 39, 41 (2d Cir. 2003).[2] In addition, parole officials are entitled to absolute immunity under section 1983 when they perform a quasi-adjudicatory function in deciding to grant, deny or revoke parole. See Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999). In light of this absolute immunity, plaintiff's unlawful revocation of parole claim will be dismissed without leave to amend.

IV. Conclusion

Accordingly, plaintiff will be given an opportunity to file a second amended complaint alleging a § 1983 claim for damages based on a violation of his Fourteenth Amendment right to substantive due process under Jacobs. To state a claim for relief as to any defendant named in the second amended complaint, plaintiff must plead specific facts permitting a reasonable inference that the named defendant required him to reside at

---

[2] If plaintiff wishes to challenge the revocation of his parole, he must file a petition for writ of habeas corpus in state court. See Hanton v. Byrd, No. CV064020174, 2009 WL 3739379 (Conn. Super. Ct. Oct. 7, 2009).

Daytop as a condition of his parole although he knew plaintiff would suffer serious harm. Unless this showing is made with regard to a named defendant, the second amended complaint as to that defendant will be dismissed without leave to amend. Plaintiff should bear in mind that absolute immunity bars claims under § 1983 based on conduct by a parole official performing a quasi-adjudicative function. To be timely, the second amended complaint must be filed on or before October 15, 2017. If no second amended complaint is filed, the action will be dismissed. All other claims under § 1983 are dismissed.

This dismissal order does not apply to any claims the plaintiff might have under state law. To the extent plaintiff's allegations can be construed as attempting to state a claim under state law, the Court declines to exercise supplemental jurisdiction over any such claim.

So ordered this 1st day of September 2017.

/s/<br>Robert N. Chatigny<br>United States District Judge